May it please the court, Michael Powell on behalf of Mr. Hugo Cruz-Garcia. How are you? I'm fine, Judge. I see a little parallel between the two cases here. And a real famous trial attorney once said, Edward Bennett Williams, that, you know, the briefs are fine, the law is fine, what you need is a witness. In our case, we had a witness. We had a witness that would dispel the government's key witnesses' testimony that he had no knowledge of drug deals and he was too stupid and a box of rocks to be able to have carried this off, and therefore the co-defendant who happened to be in the car with him was guilty as he was of dealing drugs. And the judge ruled that because, and this is the way I understand Judge Hagin's ruling, was that because there was a conviction under 609, then 404B would not apply in this particular case. And it's interesting because the judge allowed if in rebuttal or if our defendant took the stand, 404B evidence would have been coming in against him through the co-defendant's testimony. Well, counsel, if the defendant's desire was to show that the co-defendant was smarter than a box of rocks, or had some capability, there must be dozens of other ways to show that besides prior drug deals that have a 403 balancing problem involved in them. Maybe he went to technical school or maybe he finished high school, or there must be many other opportunities besides that. So I guess I'm wondering why this closed the door to the response as distinct from simply closing the door to one method of responding. Well, Judge, number one, at least the government emphasized that the co-defendant, Mr. Castro or Ramos Lopez as we call him, had only a fifth-grade education in Mexico. And they emphasized that. In fact, they started that in their opening argument, saying, we're going to tell you up front he's not a very bright guy. He doesn't know much. He's only been to the fifth grade in a school in Mexico. Isn't the point that the specific claim was that he was too stupid to do this by himself? And what you wanted to demonstrate was that he had done other drug deals by himself, not by himself. So it was directly responsive of why nothing else would have been. Well, that is the point, Judge Rosano. I mean, the government was portraying this man as having. Well, no, if he had a Ph.D. in physics, it would have helped. Well, yeah. He probably didn't. And if we would have been able to find that he had a Ph.D. in law and witness, we would have put that on. But it was responsive specifically to the knowledge that was necessary in this case to rebut what the government was trying to show to the jury. I guess the other question in my mind is whether, let's assume now that you're right, that it was erroneous to exclude this evidence. In trying to figure out what difference it makes, I was struck by the fact that the co-defendant lied repeatedly under oath, and I thought the defense lawyer did a really quite good job in the closing argument with that and other things to show that the co-defendant was simply just a liar all the time and shouldn't be believed. And if that wasn't enough to sway the jury, I'm not really sure why it would have made any difference to say, oh, by the way, he once sold drugs before or twice or whatever it was. Well, it wasn't that he just once sold drugs before Judge Graber. It was the fact that he knew how to do it. The fact that, well, I mean, we couldn't even get into question of the co-defendant. He was arrested. When he was arrested, he had a beeper. He was the only guy in the car that had a beeper. But my point is, if the jury was shown unequivocally that this guy was a liar from day one, I'm not sure whether the extent of his stupidity would have made any difference. Do you understand my question? Well, in a lot of ways, Judge, that's an unknowable because that's what we... I thought what you said in your brief, I'm going to discredit this, the fact that he was bad at lying actually supported the government's theory. Well, I... He's so stupid he can't even tell a lie. He can't even tell a lie straight. He can't even tell a lie straight, so actually that... Makes him look dumb. Makes him look dumber. But I think the point is that we had a witness. We're entitled to get to the jury with this. This is a jury question. They may not believe him at all, but still, we're entitled to tell the jury all the facts, tell them our side of the facts. Let us know Mr. Cashler was not a dummy, that he didn't need this guy at all. Because basically what happened, it appears that the government, knowing the guy was going to lie and was going to continue to lie and was a bad liar, had a theory. They came up with a clever theory. And you fairly, or whoever, I don't know if you tried it, foresaw the theory and therefore tried to counteract this other theory, which didn't really have to do with lying. It had to do with stupidity. It's not a matter of credibility. It's a matter of his knowledge. He was able to do this all by himself, which then made sense. I mean, because the testimony was that he really was too dumb. He didn't know anything. Our client gave him the drugs, packaged the drugs, and said, and he was so stupid he just sat there and put them in his own coat. And we wanted to dispel that by bringing in his prior conduct with the undercover officer there in Reno that involved heroin specifically, where he had his own beeper. So was the district court doing a 403 balancing or was the district court of the view that because of 609, 404 just didn't apply? I mean, what was his theory? Well, that, you know, I can't get inside of the judge's head. What did he say? I'm going to ask you what his mindset was. What did he say? What he said was, no, under 609, all I'm going to let you present is the fact of conviction. I will not let you go under those facts because of 609. So did he make a 404B ruling at all? Did not, Your Honor. He just said, I'm not going to do it because 609 trumps 404B. He never made a ruling on it. He asked, he says, well, I have some concerns about this. Did he make a 403 ruling? He did not. He says, I have concerns about this. I want to hear from the government. That part, that was never presented. It just stopped there. I mean, you know, because we tried to, we presented this pretrial. We tried to get a ruling on it. It didn't. Some of it got ruled on, some of it didn't. And then it got deferred to the middle of the trial. But the judge never, he never made a statement, he never made that ruling that I can see. He based his sole ruling on 609 and all you're allowed to do is put it in conviction. And did you explain why you needed this? Because of the stupidity defense? Exactly. We explained exactly this was 404B and this was for knowledge. I mean, that's in the record. We explained specifically. It's not exactly for knowledge. I mean, it really isn't exactly for knowledge. It's really to demonstrate capability. It's really not one of the list of 404B things. It's really the other. Well, for his knowledge and his ability. Right. Well, it's a lack of absence of a mistake in that particular case. But knowledge, I think, was the one to take. It's not a mistake. Nobody was claiming he made a mistake. They were simply claiming that he didn't do this by himself. They weren't even claiming he didn't do it. They didn't do it by himself. Well, Ashley said, no, he was just along for the ride. That was his testimony. And then our client just handed him drugs because he was so stupid he would sit there and hold them. And that does work. But even if he had been thoroughly involved, you still have the same problem. I'm sorry, Your Honor. I don't see it as a knowledge problem in the classic knowledge sense. It's a question of whether he had the capacity to do the thing that he did. Well, he had the chance to be able to do this by himself, which he was denying in which the government was presenting it to the jury, that he couldn't do this by himself. You have about two minutes. Would you like to reserve? Yes, please, Your Honor. We'll hear from the government. Good morning. May it please the Court. My name is Craig Denny. I represent the United States. Your Honors, the district court did not deny the defendant's right to present a defense in this case. To be quite candid with the Court, the co-defendant, Mr. Mesa Castro, Mr. Ramos Lopez, however you prefer to refer to him, he was established not to be the brightest fellow during the cross-examination by defense counsel. And I would also acknowledge that they did a fine job of beating him about the head and shoulders, front and backwards. They established he had lied during his guilty plea to the judge during the Providency Inquiry. They had established that he had misrepresented his identity. But the problem is whoever the assistant U.S. attorney was at trial. It was myself, Your Honor. That's not good. Argued to the jury that this man was incapable of doing a direct transaction by himself. When the government knew full well that he not only was capable of doing so, but actually had done so in the past. Now, if you read my opinions, you will know there's one thing that really I don't like at all. It's when the government misleads the jury that way. When the government has information about the defendant or one of the witnesses, and then it makes an argument to the jury that goes contrary to what the government knows to be the truth. And what it looks like to me here is that you, and I was sort of hoping it wouldn't be you. It would be some third party, somebody else speaking for the assistant U.S. attorney who was at trial. You stood before the jury and you told them an untruth. I don't believe I did. You presented to them that he was incapable of doing the very fact, the very thing that you knew he was capable of doing and had done and was convicted of in the past, and that you urged the district court to keep away from the jury. Your Honor, I That just strikes me as not being worthy of a representative of the United States government. Your Honor, I would dispute that I was trying to mislead the jury in this case. I would highly dispute that because the jury was well aware that Mr. Mazecastro was a convicted felon, and he was a convicted felon for drug trafficking. Was the jury aware that contrary to what you argued to them, that he had on his own, without any help, had had the intelligence and wherewithal to conduct a drug transaction involving the very same drug on his own alone? Was the jury aware of that? Your Honor, they were aware that he had been previously convicted of drug trafficking. But that's quite different. They could have been two. Counsel, will you answer my question? All right. Was the jury aware, and I will state it one more time, and I would like a yes or no answer. You can explain afterwards. Was the jury aware that this defendant, I'm sorry, this witness, was not merely capable of committing this crime by himself, but in fact had been convicted of doing so? Well, Your Honor, I think that implicitly, yes. I believe implicitly, yes, Your Honor, because they were aware that he was convicted of trafficking heroin on a prior occasion. By himself? Your Honor, the prior conviction. You argued to the jury that he was too dumb to do it by himself. Was there anything in the record that would have alerted the jury that when you stood there and said, this guy is too dumb to do it by himself, that you were aware that he had not only was capable of it, but had actually done it or was convicted of doing it by himself? Was there anything before the jury that told him that? I don't believe I know, Your Honor, but the offer of proof. Your Honor, counsel, if you don't know, would you like a chance to examine the record to find out? Do you think if you look in the record, you'll find something? Your Honor, in the offer of proof that the defense presented in this case, this defendant or the co-defendant, Mr. Mazecastro, his previous conviction for drug trafficking, he did it with someone else. There were two individuals involved, him and someone else, dealing the heroin. I don't think the jury was in any way misled that, you know, after he had been cross-examined over 40 pages of the record and showed that he would admit to just about anything, I was simply making a reasonable comment on the evidence. And the jury heard him. The jury heard him, so did the court. The argument that was being made was that the earlier conviction, the manner of the earlier convictions demonstrated that he did operate sufficiently alone. What do you mean by saying that? You're now saying that wasn't true, that the representation of what the evidence would have showed about the earlier convictions was not what the defendant is representing? No, Your Honor. I believe that the offer of proof that was submitted in the record was he had been previously convicted in Nevada of drug trafficking. And there was another individual that he was working with while they were doing the drug trafficking acts. It wasn't the... Physically present? Yes, sir. They were both charged, individual transactions, but they were charged together. Individual transactions. In other words, he did by himself go someplace and engage in a drug transaction, and that's what the defendant wanted to demonstrate. The fact that he was in cahoots with someone else in getting the drugs isn't the point, but he did go off by himself and deal with a confidential informant or someone like that and sell them drugs, right? That's correct. And that's what you want to keep, that's what was kept out. Your Honor, I will be candid. The reason we sought to prevent the defense from going into the underlying facts of this prior drug trafficking conviction was we were going to have a trial within the trial going into great detail about these underlying acts. After the co-defendant was up there and testified for at least an hour during his cross-examination and, you know, fell apart, I was making comments to the jury on, you know, you've heard his testimony. Is he, you know, is he bright enough to bring it off by himself? There was no way to mislead the jury that he could. But he did bring it by himself. He did. I mean, this wasn't the... We weren't... It didn't require the fact that he had produced the heroin or that he had imported it or that he was the mastermind. It only required that he was capable by himself of getting some heroin from somebody and selling it to somebody else. And that's what he had done in the past. I don't see how the jury would have been misled if they knew that he had been previously convicted of drug trafficking and that he admitted multiple times during his cross-examination that he had lied to the court during his guilty plea and during prior appearances with his alias. Do you agree or disagree with the proposition stated by opposing counsel that the trial court did not, in fact, do a 403 balancing? Your Honor, he did not, the judge did not specifically say, I'm saying that the probative value is substantially outweighed by the prejudicial effect. However, I think if you look in the record, he makes a couple comments during the cross-examination seeming to make that balancing test where he tells defense counsel to move on. I think we've plumbed this out enough. The court mentions in the excerpt of the record on 198 and 207 where he lets the defense counsel know, you've established that this guy is a liar. You've established that he's a convicted felon. This is his third time. And just for an example, Your Honor, we went through his background to determine whether he had a conviction in California, and there wasn't any. The question that I asked him on the redirect was, do you understand the difference between arrest and a conviction? And he didn't seem to be. The government's concern in not going into the underlying facts was not to in any way mislead the jury. It was simply making the comment on the evidence that there was. Yeah, I know. Just in the prior case, the government was just being generous and trying to, you know, not really worry about the evidence, but just sort of don't want to confuse the jury. I understand these things. But then you stand up and argue to the jury something that really is inconsistent with the facts as you know them. Not only do you keep the evidence out, but you take advantage of the absence of the evidence that you persuaded the district judge from admitting by arguing to the jury something that is contrary to the facts as you know them. It's not going to read well in third, you know. It's just not going to read well. Your Honor, I dispute the characterization that you're making. I don't read it that way. I was simply commenting on the evidence as it was before the court. Because you kept the other evidence out. Your Honor, I did not. Let's look at it this way. Had you not kept the evidence out, could you have made the argument you made? I believe so, yes, Your Honor. Not as credibly, certainly. I'm betting, was Mr. Powell the defense counsel at trial? Whoever the defense counsel at trial was would have said, well, you know, you heard the U.S. attorney say he was dumb as a box of rocks and couldn't have pulled this off by himself, and therefore you have to infer that even though he was sitting there and he is the only guy who had the drugs and my client didn't have any drugs, he was just a driver, the U.S. attorney wants to believe that he couldn't have done it. The other guy couldn't have done it by himself. But look what he did before. He sold the same drugs by himself. He had a beeper. He did all these things. You heard the evidence. The U.S. attorney is trying to pull the wool over your eyes. That's what the defense lawyer would have said. The reason you were able to argue this to the jury with impunity, without having the defense lawyer come in and cram those words down your throat, is that you kept the evidence out. It's just plain as day. I disagree, Your Honor. I think the district court decided that in this case the defense had ample opportunity to establish that this individual was a drug trafficker. This would have been an overkill to go into the underlying facts of his prior incidences and what the jury is going to be thinking. Are we talking about Mr. Cruz-Garcia being on trial or Mr. Mazy-Castro being on trial? So what you're saying is you won't mind when we write an opinion, whichever way we write it, whichever way we come out, when we explain what you did in print using your name. You will be proud of what you did, and we'll be perfectly satisfied to have the bar read that. Your Honor, I'm just curious. What do I do when I find lawyers have misbehaved? Usually they write a letter saying, please take my name off it. With all due respect, Your Honor. That's how these things play out. For what it's worth, I looked at it, and I didn't think it was particularly becoming. Well, with all due respect, Your Honor, I discussed the case and what happened at the trial with my supervisors, and I was simply commenting on the evidence as it was, not trying to sue them. Perhaps you should go home and talk to Mr. Bogan. Bogan. Tell him what you heard us talk about today and see what he says. You have a couple of minutes for rebuttal, Mr. Powell, if you wish to take it. It is Mr. Powell, right? Yes. Unless the court has a specific question. The only comment I would make is that the testimony that we wanted to present to the jury was that now once, not twice, six times the co-defendant in testifying co-defendant in this case sold on his own, not to a confidential informant, but to an undercover police officer with a beeper setting the price exactly that, so we could make that argument, yes, this man knew how to do this, and he was not too dumb to have done it alone. That's it. We wanted the jury to hear that, and I think we're entitled for the jury to hear that. The case's argument stands submitted. Thank you. How long does it take to make a tape, a copy of the tape of today's oral argument? I suggest counsel get a tape, take it back to their respective supervisors. Thank you. Okay. The case's argument stands submitted. We are now adjourned.
judges: Kozinski, Graber, Berzon